Good morning, Your Honors. I represent Ed Rosenthal. If it pleases the Court, I'll make a brief statement, answer questions, and reserve time for rebuttal. This is a case that I think best begins with a statement that Judge Breyer made in his sentencing memorandum, where he began with the statement, This is not an ordinary drug case. I would submit to you that if in fact this was an ordinary drug case, all of the arguments that we'll be making and hearing today and you will be deciding would be fundamentally different. In making that decision in sentencing, he pointed to two things. He pointed first to the Oakland City Ordinance, which in his words was designed to provide for the distribution of safe and affordable medical marijuana in a consistent, reliable, and legal fashion. And then he pointed to the fact that Mr. Rosenthal was deputized by the Oakland Cannabis Buyers Club with the authorization of the City of Oakland. And then he made a series of very remarkable findings, that Mr. Rosenthal was acting on the basis of an honest and reasonable belief that he was in fact a city official. And he took that all into account when he sentenced him after the end of the first trial. I think he took it into account in sentencing, but I think it was an error. Which was entirely proper for him to do. But I think it was an error for the jury not to have heard that for the reasons that I lay out in the brief. Well, if I recall, at the end of the second trial at some point during the proceedings, maybe it was right when the issue was whether or not Mr.   He said, Mr. Rosenthal, you can testify. You can tell your story. The words he used, you can tell your story. And Mr. Rosenthal said, no, I don't want to tell my story unless I can have it corroborated with witnesses from the Oakland City Council and whoever. And Judge Breyer said, no, but you can tell your story. And Mr. Rosenthal said, I'm not testifying. Your Honor, several things. First, I think that to tell a witness, a defendant, that he can testify, but that in fact if he testifies, he's not going to be able to put anyone on the stand to corroborate the accuracy, the validity, the truth of what he was saying. Well, the whole, as I understand it from reading all of this, is that the whole, you know, really what you wanted to do was to get the jury to nullify. No, Your Honor. I don't think that's correct. What's the legal basis that you were contending supported the jury instructions that you wanted to offer? I think that there, as argued in the briefs, that there's a series of cases beginning and stemming mostly from Morissette, which placed the emphasis on the fact that in any particular crime it's important, as the Morissette court said, to have the concurrence of an evil-meaning mind with an evil-doing hand. And that Morissette Supreme Court decision has been the case that the Supreme Court itself and this circuit in a whole series of cases has used to argue for reading into statutes a mens rea that would eliminate the possibility of the conviction of an innocent individual. And I think that that's what, in fact, happened here. So what's the defense here? Tell me what the defense is. The defense is twofold. First, I think that, as we argue in the brief, that the issue is mistake. Mistake of fact? Mistake of law? I think it was a mistake of fact. I think a mistake of law. A mixed mistake of law. You say you think, but you've been thinking about this for how many years now? So what is a mistake of fact? A mistake of law? When I say I think, because I think that what happens is they all three merge together. The mistake of fact argument is fairly clear. The fact that Mr. Rosenthal was mistaken on was whether or not he was a city official. He was not mistaken on the law. But he didn't testify to that. Your mistake of fact argument would have more force if he testified. There's no evidence in the record to reflect the mistake of fact. Because the evidence was prevented from being in the record. No, no, he wasn't. That's what surprised me when I read the record as well, is that Judge Breyer leans over backwards and says, I'm going to let the defendant testify, and he can tell his story. And I'm not going to preclude him from testifying about matters which I've already deemed irrelevant with other witnesses. So getting back to your theory, how can you now assert a mistake of fact when the defendant decided not to testify that there was a mistake of fact? Your Honor, if you read the record closely, I think what the record reveals is that Judge Breyer vacillated on the question of how, in fact, he would treat Mr. Rosenthal's testimony, what he would let him testify to, and what instructions he would give the jury. But he said unrestricted or without limitation. He said without any restriction at all. This is your defense, and whether or not it's legally admissible is not of concern. You may testify to anything you wish. That's what he said. He said that he would do that. He also, at one point later in the record, refers to the fact that he would give instructions as to still on the questions of relevance, which he had been very clear on before. I think that this gets to the issue of corroboration, that to force a defendant to testify to a set of facts which are obviously highly contestable as to whether or not he had a reasonable belief, to leave him there testifying on his own, not allow him any corroboration when, in fact, as the prior record in the hearings on the evidence in the first trial and as the evidence, which had been repeatedly attempted to be presented and the Court would have done, would have corroborated the fact that Mr. Rosenthal's story was, in fact, reasonable and accurate. So I think that the issue here goes to the question of whether or not a defendant testifying has a right to corroborate his story. Let me ask you a question. This is kind of bothering me when I was looking through the record here. If a member of the Oakland City Council did exactly what Mr. Rosenthal did, would that somehow immunize them, in your theory? Is that your theory? Under federal law? I think that's beyond the scope of this argument, but I think that there are arguments that can be made. Well, it isn't because that's what you're saying. You're saying he was deputized, which in effect made him a city official, which a better member of the council is, and you want members of the council to come testify that what he was doing was okay as far as they're concerned. So I'm wondering how this absolves him from federal liability. It seems to me like if a member of the Oakland City Council happened to decide for themselves that they wanted to set up a medical marijuana operation, they would be inviting indictment the same as your client was. I don't think there's a provision in federal law that says that if you're a city official or a state official or a federal official, you are somehow immunized from liability under the federal drug laws. I don't see it. So I think, and it looks to me, quite frankly, that Judge Breyer actually gave your client far more leeway than he was required to. It's well established in Supreme Court precedent and in the precedent of this circuit that you are not required to allow a defendant, even presenting their own defense, to essentially testify in a manner which would, as Judge, I think, Thomas just noted, act as jury nullification. You're not required to let them get up and say, well, you know, I know what the law is, but you should ignore the law and you should find me not guilty because this is a good thing, not a bad thing. But Judge Breyer was willing to let them do that. If I can speak to your first issue about city immunity, I think under the arguments that are in the brief concerning Lanier that a city official would have had immunity under Lanier. I think secondarily that there is an argument that is now already being made in, has been made in this circuit and is now made in several local decisions based on prints, that if the federal government actually tried to prosecute a city or state official, that they would be violating the commandeering doctrine, which is a very different issue than was presented in the Raich case narrowly on Tenth Amendment grounds. Did the Supreme Court rule that? No. I'm saying that argument has been made. No court has ever adopted that. And in this case, however, the issue was not whether or not Mr. Rosenthal was an official. That's not the argument that I'm making. The argument is that Mr. Rosenthal acted on the basis of a reasonable belief that he was a city official and that that was the basis for mistake. Secondarily, as I said earlier, there's a mistake of fact because of his mistake in fact about whether or not he was a city official. That was a combination. He wasn't mistaken that he was selling marijuana. He wasn't mistaken he was selling marijuana. No, but I think that in the- I mean, if he had thought he was selling sterilized hemp or something and or some other herb and it turned out to be marijuana, well, I think that would be a fabulous defense. But if he's selling marijuana and he knows he's selling marijuana and the mistake isn't that he's selling marijuana and the law says it's against the law to sell marijuana, regardless of what else is going on, I'm wondering why mistake is a defense here. I think in the unusual circumstances of this case, the question of mistake, which was clearly excluded or the argument of mistake as it relates to mens rea and relates to an element of the offense as it was clearly excluded, was justified and that I think that this Court's own precedents support that. If I can just point to two cases which would seem on the surface to be contrary to that, which I think support the position in this case. One is the case English, 92 F. 3rd, 909, in which the Court found that a mistake of law instruction was not required, but in that decision it emphasized the inherently nefarious nature of the defendant's scheme and then pointed to the fact that the issue in Rotsloff was the question of whether or not the criminal activity was obviously evil. Then in the decision Weitzenhoff, which is cited in the State's brief, the circumstances of Weitzenhoff were very different and they were different in ways that I suggest support Mr. Rosenthal's argument. First, in that case there was an assumption which was clearly stated in the beginning of the Ninth Circuit argument that the individuals who were being accused of violating the permit were engaged in what was essentially midnight dumping and that they were acting in secret. What we have here is a case in which Mr. Rosenthal acted entirely openly. There was nothing he did to try to hide his actions, which is also relevant to the arguments I make against conspiracy. But secondly, in Weitzenhoff, the Court specifically distinguished the speech case, which was 968F second 795, and it said the distinction in speech was that in speech the defendant was not the permittee and therefore was not in the best position to know the permit status. I think that what we have here, and let's be clear, we're talking about the specific unique circumstances of Mr. Rosenthal being charged. We're not talking about an ordinary drug case. In these circumstances, I think that the effect of the Fed's thought is an ordinary drug case. Yes. I would agree with that. But I suggest that everything else suggests that it wasn't. Well, it probably wasn't, and Judge Breyer took that into consideration in sentencing, certainly, as you pointed out. And it's a unique case, but the policy issues are not really in front of us. It's about whether or not you were able to present your theory at trial and whether or not evidence was properly excluded. If I can reserve the rest of my time, thanks. Good morning. May it please the Court. My name is Lori Gray. I represent the United States. The defendant in his brief raised three issues to set aside his conviction. Here he has argued one, so I will address my arguments to that point. Defendant's good faith, while it may have been considered at sentencing, was not relevant to the issue of guilt or innocence because the charges in this case, Your Honors, involved general intent crimes. Well, why don't you address the point about his claim that essentially his theory of defense, which is a very important component in this circuit of a fair trial, his theory of defense is that even though Judge Breyer might have given him almost an unlimited opportunity to testify in his own defense, that he was somehow, that was eviscerated by the fact that he wouldn't allow him to call his corroborating witnesses and that somehow deprived him of his right to present his theory of defense. Well, he could only present a theory of defense with relevant evidence. And because he was charged But why wasn't the testimony of these city council members relevant? Because whether or not he knew he was violating the law, that is not the mens rea required by the statute. What the government was required to prove under these general intent crimes is simply that he knew he was growing marijuana. As you said, Judge Ezra, if he had come before the court and thought he was growing oregano, then he would have a mistake of fact defense. In this case, his whole thing was he never has challenged the sufficiency of the evidence that he was growing marijuana, but he didn't know it was illegal. And that's simply not the mens rea that's required in these particular charges. So for that reason So why not handle it with a jury instruction? Let the jury hear everything, everything about the ordinance, everything about what the council is doing. Get his letter of authorization and get a jury instruction that says exactly that. What's the risk of that? I mean, I guess just to back up a bit, what I find jurors get particularly angry is when they don't know the full story. And it presumes that they can't apply the law if they get the theory of the defense and all of its glory. Well, the district court is the gatekeeper for relevant evidence. And I would argue, Your Honor, that that's precisely in this case they were trying to get before the jury irrelevant evidence in the hope for jury nullification. And any theory Go ahead. Any theory that they've presented, whether it's estoppel or immunity or good faith, all is under this overarching plan to get before them the California marijuana laws in the hope that they then will not convict enforcing the Controlled Substances Act. I was amazed when I read the transcript where Judge Breyer says, you're going to testify and I'll let you tell your whole story. Well, I took from that, and I take Judge Breyer at his words, because he said without restriction or limitation or something. And I take him for what he said, which was that he would have allowed Rosenthal to take the stand and to tell his story, that he was deputized and he was growing the marijuana for the purposes of providing it to people who needed it for medical reasons and everything else. So why was it why I think I Why isn't that all irrelevant under what you're saying? I think it was irrelevant. I didn't see an objection from the government. Well, it didn't happen, but I think it was irrelevant because it didn't go to it went to willfulness, not knowledge. And the court did instruct the jury that the reason for growing the marijuana, there was some instruction where he said you've heard a limited amount of evidence about Medical marijuana. Exactly. And that that doesn't go to the knowledge of the knowing element with regard to the defendant. So they had some of that in, into evidence. But I would disagree that Mr. Rosenthal should have been permitted to testify, and the bottom line is that he did not testify. Right. There is a little bit of a distinction here that I found a bit puzzling, in that if you get to the point where you say I'm going to allow the testimony in, you're also forcing the defendant to testify, because you're saying I'm not going to let any other evidence in unless, except through your own testimony. Now, on the surface, that seems reasonable enough, but really it's forcing the defendants to testify, and perhaps against his Fifth Amendment rights. In other words, I'm not going to let you, I'm going to let you tell your story, but I'm not going to let you, I'm not going to, I'm going to exclude all these other witnesses. It's a bit dicey. Well, pretrial, the court, in an effort to ensure that irrelevant evidence didn't go to the jury, had the pretrial hearing and asked for a proffer from the defendant as to his witnesses, and there were a number of witnesses that the court was willing to allow testify on other matters. Impeachment issues, I believe at one point they presented a witness to say there weren't that many plants grown at the Oakland facility, that kind of thing. So it wasn't just going to be the defendant up there alone. Granted, the other witnesses weren't going to be permitted to testify to irrelevant evidence, but I think what's important. There may be a lot of tactical reasons why, though, a defendant may not want to testify that go to different issues. I mean, a defendant may not want to subject themselves to cross-examination. And the defendant made a strategy decision to not testify. The court laid it out, and as a matter of fact, the defendant said, you know, I'm going to think about that. The court gave the defendant another day, came back the next day, and the defendant said, I'm not going to testify. Right. And that cuts in your favor, except to the extent that we have this issue of the court saying this is the only evidence we're going to accept on this issue is your testimony. So then the defendant is faced with a hobson's choice of waiving his Fifth Amendment rights and testifying or resting on the case without any evidence as to his theory. I appreciate the Court's concern with that, and I would just come back to the fact that that evidence shouldn't have been relevant regardless because of the nature of the offenses here. And this is not a situation where an exception should be made because the marijuana laws are very straightforward. They're unlike Retzlaff, which was, as I know Your Honors are aware, a more complicated currency transaction case where innocent citizens could be caught up in something that they didn't realize. I mean, growing marijuana is clearly a nefarious activity. The laws are straightforward that if you grow marijuana, you're guilty of violating the Federal laws. And as the district court found, since it stated in its published opinion, since the Civil War, this country has recognized that whatever the views of local governments, such views do not control the enforcement of Federal law. There is no local opt-out provision in the Controlled Substances Act, and that's at the Court's opinion at page 1075. Well, I guess you could also argue that as a tactical foot, as an old baseball player, put the district court in a squeeze play by saying, well, my defendant can't testify unless his corroborating witnesses testify. If you don't let his corroborating witnesses testify, you're denying him his right to testify. So it puts the district court in a very difficult position as well. I agree. And again, it all comes back to what evidence was properly relevant and what wasn't. If there are any other questions on this, I'm happy to answer them. If not, I would ---- Do you think that our Ninth Circuit or, you know, the first Ninth Circuit decision in this case, did that or are all these arguments barred by the law of the case doctrine? That's what the district court found, and I believe that because, again, it's all under an overarching theory, the theory being to get before the jury irrelevant evidence going to jury nullification. So you can dress it up and call it whatever you want, but it's all the same thing, and precisely it would be excluded under law of the case. Well, that's a prudential doctrine. I mean, it's not a bar. The law of the circuit may be a bar to some of the consideration, but the law of the case doesn't necessarily bar the district court from considering, for example, a mens rea argument here. I'm not sure it reaches quite that far, but it's a ---- you know, obviously we view that for abuse of discretion. But I don't think it's an absolute ---- it doesn't strike me it's an absolute bar. I only ask that question because repeatedly throughout all these proceedings there's the, quote, unquote, medical marijuana defense. Correct. Correct. I never really understood what that encompassed. Well, and I think probably the defendant can answer that better than I can, but I think what it encompasses is trying to get all of these different theories that what he was trying to do, whether it's good faith, whether he believed he was doing it illegally or not, that he would be okay doing it for medical reasons. And the federal statute simply says no. So I assume that you would say that it would have been irrelevant if they had attempted to proffer, say, three or four people to come up and say, well, you know, I buy my medical marijuana from Mr. Rosenthal and he helps me because I no longer have nausea or something during my chemotherapy and those kinds of things. You're right, Your Honor. I would say that's irrelevant under the statute charged in this case. Well, I appreciate the government's position, but basically I think the government was seeking in this case to prohibit the evidence because it feared a substantial likelihood of a jury nullification, right? That could have probably been the end result, but that would be in any case. If irrelevant evidence is permitted in, that's asking the jury to make a decision based not on the evidence as to a person's guilt or innocence, but on irrelevant factors. And that, in any case, would be the position of the government to keep out that kind of evidence and just put in that which is relevant to the elements of the offense and to the charges in the indictment. Would you address the striking of some of the defenses from the jury instruction at the end of the case? Judge Breyer excised some of the, for example, mistake and others from the standard Ninth Circuit instruction. Well, primarily most of the instructions that were proposed by the defense counsel were not Ninth Circuit jury instructions. I understand that. But from the model instruction, he did excise a ---- In the knowing instruction. Yes. He did excise in the knowing. He gave the instruction. The jury was properly instructed, of course, that they had to find beyond reasonable doubt all elements of the offense. And then the jury was properly instructed that defendant had to know that it was marijuana that he was producing. The court then instructed the jury verbatim with the Ninth Circuit model jury instruction 5.6, except admitted the words and does not act through ignorance, mistake, or accident. So what the jury was told is an act is done knowingly if the defendant is aware of the act. The government is not required to prove that the defendant knew that his acts or omissions were marijuana. You may consider evidence of the defendant's words, acts, or omissions along with all other evidence in deciding whether the defendant acted knowingly. The court omitted those words because there was absolutely no evidence presented that the defendant grew the marijuana through ignorance, mistake, or accident. Right. I understand the district court's theory, but if I recall the record correctly, the jury instructions were discussed pretrial. Defense wanted. And, in fact, this instruction was discussed pretrial. It was. And so the defendant went to trial based on the assumption, I think reasonable assumption, that that instruction would be given as it was. Then you make some tactical decisions based on that instruction, which you can argue, but then at the end of the case you say, well, no, now we're going to, I'm not going to give the instruction as I originally said I would. I'm going to excise some of that. And that struck me as a bit unfair. Well, the reason the court did that, Your Honor, and the court did it after a colloquy that, as I recall, took up several pages in the transcript, is asked the defendant, what evidence is there that the defendant grew this? Well, there was no evidence at that point. And because there was. But I'm just saying that had the defendant known that the instruction might be altered, the defendant might well have made a different decision about testifying. And I would ask the court in looking at that to look at all the instructions as a whole that were given. And I think if we need to go back to a harmless air standard, that in fact it was harmless because the evidence was overwhelming with regard to the 3,000 plants that were seized from the facility that the defendant was knowingly growing marijuana. And he never submitted any evidence that he wasn't. And so taken as a whole, the evidence supports the giving of that particular jury instruction and there wasn't any air. Any further questions? Thank you, Your Honor. I would then submit. Thank you very much. Quickly, on the law of the case, I'd like to direct the Court's attention to U.S. v. Almazan-Bacera, a case decided last year that I think clarifies exactly this issue in terms of prudential doctrine. Could you, before you get there, could you go back? I thought Judge Thomas' point was an excellent one. Can you answer that question with respect to the jury instructions? What effect, if any, that might have had? The issue on the jury instructions, I think, was clear. The mistake, the excision of the mistake, excluded the only basis upon which the defendant could have presented his theory of the case. But what was his mistake? His mistake wasn't that it was marijuana. His mistake was, one, a mistake of fact based on the fact that he thought he was an official, two, a mistake of law based on the argument that's laid out in the brief in terms of the complexity of the precedent regarding federalism, which is I think the relevant issue in terms of complexity, not the question of what the law is. I also would like, though, to go quickly to this issue of his failure to testify because I think that that is really the core issue. If you read the transcript closely, that colloquy and all of those discussions only occur at the point in time in which Judge Breyer realizes the defense is not going to present any evidence because they've been excluded from it. So, therefore, it is not a situation in which, as was suggested, the defendant put the court in a bind. It was a situation in which Judge Breyer only made that decision and made that offer after he realized that he was going to be confronted with a situation in which the defense's position was that it had been totally denied the ability to present any evidence. I think that's a highly significant fact. I mean, regardless of what he was thinking, why does it matter? He did offer your – and there's an extensive colloquy and some time given overnight. At the end of the day, you and your client had to make a decision on whether he was going to testify. And Judge Breyer made the offer of saying, I'm not going to limit your testimony. I think it goes to the question that you, Your Honor, raised about the defendant – putting the defendant in a position where he was either compelled to testify or not present evidence. Secondly, though, I think going back to the right to present corroborating evidence, if Mr. Rosenthal had chosen to testify, he would have faced exactly the objections that have been argued here by the State. He would have been subjected to a situation in which his testimony would have been questioned under cross-examination and he would have had no ability to present witnesses to corroborate the veracity of his testimony. And I think that that is an – that that is an untenable position to place a defendant in in a case like this. Once again, I conclude by saying this was not an ordinary drug case, and I don't think that the standards that apply in ordinary drug cases with regard to issues of mistake of fact and mistake of law, and particularly with regard to the question of a conspiracy clause which has not been charged, which has not been discussed, we have – The same mens rea would apply to conspiracy as the substantive charge, so it kind of folds into your other argument, right? I think it's different. I think in conspiracy, if we distinguish what the mens rea for conspiracy would be versus what the standard of evidence and the kinds of evidence that is usually introduced in conspiracy cases, I think the precedent – the irony is that this is a case in which the Court precluded exactly the kind of evidence regarding agreement, which is the essence of a conspiracy, that is normally allowed in. In fact, it's normally the prosecution that wants that evidence in. In this case, they didn't because to have allowed that evidence in would have gone to the heart of what was the real issue and the real facts of this case. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments and briefs. I know that all of you have lived with this case a lot longer than we have, and we appreciate your efforts on behalf of the clients. Well done by you. Thank you.
judges: Thomas, Paez, Ezra